FISH *v.* UNITED STATES (No. 2266).[1]

1. CONSTRUCTION, SECTIONS 489, TARIFF ACT OF 1922, AND 195 AND-198, JUDICIAL CODE.

Under sections 195 and 198, Judicial Code, the Court of Customs Appeals has jurisdiction to review the action of the Board of United States General Appraisers upon a petition filed under section 489, tariff act of 1922, for the remission of additional duties; and this review covers both law and fact. Such decision by the board is final, and not interlocutory.

[1] T. D., 40315.

2. EVIDENCE, SUFFICIENCY ON REVIEW—SECTION 489, TARIFF ACT OF 1922.

Upon review by this court of the action by the Board of United States General Appraisers upon a petition filed under section 489, tariff act of 1922, for the remission of additional duties, such action will be reversed if clearly contrary to the weight of the evidence, and will not be affirmed merely because founded upon some evidence. The language of the section, "satisfactory evidence," does not mean satisfactory to the board, but means the amount of proof which would ordinarily satisfy an unprejudiced and reasonable mind.

3. CARELESSNESS NOT FRAUD.

Carelessness in making entries is not sufficient to impute to a petitioner for remission of additional duties under section 489, tariff act of 1922, an intention to defraud the revenue or to conceal or misrepresent the facts or to deceive the appraiser as to the value of the merchandise.

United States Court of Customs Appeals, June 28, 1924

APPEAL from Board of United States General Appraisers, Abstract 45757

[Reversed and remanded.]

*Allan R. Brown* for appellant.
*Wm. W. Hoppin,* Assistant Attorney General (*Pelham St. George Bissell* and *Abraham H. Goodman,* special attorneys, of counsel), for the United States.

[Oral argument Mar. 18 and 19, 1924, by Mr. Brown and Mr Hoppin]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This is an appeal from a decision of the Board of General Appraisers denying two petitions filed under section 489 of the tariff act of 1922 with relation to additional duties.

The petitions prayed for orders or findings of the board that the importer entered the merchandise at a less value than the final appraised value thereof without intent to defraud the revenues of the United States, or to conceal or misrepresent the facts, or to deceive the appraisers as to the value of the merchandise.

Section 489 of the tariff act of 1922 reads as follows:

SEC. 489. Additional duties. * * * Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided, except in the case of manifest clerical error, upon the order of the Secretary of the Treasury, or in any case upon the findings of the Board of General Appraisers, upon a petition filed and supported by satisfactory evidence under such rules as the board may prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. * * *

Upon the making of such order or finding the additional duties shall be remitted or refunded, wholly or in part, and the entry shall be liquidated or reliquidated accordingly. * * *

The importer purchased at Hongkong the following quantities of plaited peacock flues at the following prices and on the following dates:

Fifty pounds, at $26 per pound, July 9, 1922.

Forty-eight pounds, at $28 per pound, July 27, 1922.

Fifty pounds, at $28 per pound, August 20, 1922.

Thirty-six pounds, at $23 per pound, August 30, 1922.

Twenty-seven pounds, at $32 per pound, August 30, 1922.

The importations were entered at the customhouse by the importer's broker, and the entered value stated in the entries was the price paid for each lot of flues, which was also the invoice price. All of the goods were appraised at $32 per pound. Whereupon the importer filed petitions under section 489.

In support of the petitions importer at the trial brought forward the importer Strauss, who testified that peacock flues are small feathers on the sides of the stems of peacock feathers; that they are put through a machine or needle process in China; that he purchased the goods by cable; that he was not concerned with the market in China except in the instances when he was trying to buy; that when he bought he got quotations by cable, and that he made counter offers; that the method of preparing these goods for the market has prevailed for the last two years, and that at times there is a big demand for them; that the market fluctuates, and during the last two years has fluctuated as much as 50 per cent; that the price on yesterday or two days ago would not necessarily be the price of the goods to-day; that he has been importing the goods for two years, and that this was the first instance in which there had been an advance in value by the appraiser. He was not asked if he had made any entries other than the ones in question under the act of 1922. He stated he made the purchases on the dates and for the prices set out above, and when the goods arrived he sent the papers to his customs brokers with no instructions, and that they entered the goods according to the consular invoices; that in doing so there was no intention on his part to mislead the appraiser; that he did nothing affirmatively or negatively intended to mislead the appraiser; that he did not concern himself about the market value at the time; that in making the entry at the price he did there was no intention on his part to defraud the revenues of the United States, and that he gave the broker the invoice and told him to make the entry and that in so doing he did not intend to deceive the appraiser; that during the past two years peacock flues have been a common commodity; that the shipment was by parcel post and the entries were approximately of the same date, November 9 and 11; that the invoice, dated at Hongkong, September 26, has all the prices on it; that the broker did not make the entry in his own name but did prepare the papers;

that he had been importing since 1895; that he made no effort to ascertain what the value was on the date of exportation of the goods; that if he had made such effort he would have been required to cable in every instance on every entry he made. This was all the evidence there was.

The Board of General Appraisers denied the petition apparently chiefly on the grounds that the wrong man testified, and that the broker should have testified, and that the importer was careless and negligent.

The Government in this court moved to dismiss the appeal on the ground that there was no statute giving the right to appeal.

Sections 195 and 198 of the Judicial Code, adopted March 3, 1911, read as follows:

SEC. 195. The Court of Customs Appeals established by this chapter shall exercise exclusive appellate jurisdiction to review by appeal, as herein provided, final decisions by a Board of General Appraisers in all cases as to the construction of the law and the facts respecting the classification of merchandise and the rate of duty imposed thereon under such classification, and the fees and charges connected therewith, and all appealable questions as to the jurisdiction of said board, and all appealable questions as to the laws and regulations governing the collection of the customs revenues    *    *

SEC. 198. If the importer, owner, consignee, or agent of any imported merchandise, or the collector or Secretary of the Treasury, shall be dissatisfied with the decision of the Board of General Appraisers as to the construction of the law and the facts respecting the classification of such merchandise and the rate of duty imposed thereon under such classification or with any other appealable decision of said board, they, or either of them, may, within sixty days next after the entry of such decree or judgment, and not afterwards, apply to the Court of Customs Appeals for a review of the questions of law and fact involved in such decision.    *    *    *

In Brown & Co. et al. v. United States (12 Ct. Cust. Appls. 26; T. D. 40026), an appeal was taken from the decision of the board dismissing the petition for an order under section 489, which decision held that the board was without jurisdiction to consider the petition. On appeal to this court, we held that the action of the board in dismissing the petition for rehearing was a final decision "as to the construction of the law    *    *    * respecting the rate of duty imposed and the fees and charges connected therewith," and was an appealable question "as to the jurisdiction of said board," and also raised an appealable question as "to the laws and regulations governing the collection of customs revenues."

It may be contended that the Brown case, supra, deciding a question of the jurisdiction of the board, is not in point with the case at hand. We think otherwise. The action of the Board of General Appraisers upon the petition for an order for the remission of duties is, under the same sections of the Code, a final decision "as to the construction of the law    *    *    * respecting the rate of duty imposed

and the fees and charges connected therewith," and such action on the part of the board also, as in the Brown case, raises an appealable question as to the laws and regulations governing the collection of customs revenues.

Under section 195, the Court of Customs Appeals is given exclusive appellate jurisdiction to review "final decisions by the Board of General Appraisers in all cases as to the construction of law and facts" * *. * in "all appealable questions as to the laws and regulations governing the collection of customs revenues."

Section 198 provides that the importer may apply to the Court of Customs Appeals for a review of the construction of law and facts involved in a decision of the Board of General Appraisers or "any other appealable decision of the board."

It will be noted that in section 195 the words "final decisions" are used, and in section 198 the word "decision" is used. Under either section above referred to, this court is authorized to review the action of the board involved in this case. The action of the board denying the petition is a final decision; it is the end of the issue involved in the hearing in that case as far as the Board of General Appraisers is concerned. The act of 1922 gives the board a new duty to perform, and in such duty they have exclusive original jurisdiction. Their action is not temporary or subject to change or modification by them; it is final and conclusive as between the parties. If the board in this case had decided that there was no intent to defraud the revenues, etc., and had made an order or finding accordingly, could it have been contended that the order or finding was not final and was not a decision standing out independent of any other issue that might arise from the entry? It may be contended that the action of the board on petitions for remission like the one at hand is in the nature of an interlocutory order. Interlocutory means, "Not final, provisional, temporary." (Corpus Juris, 36, p. 268.)

Interlocutory orders are not orders which finally settle the main issue in the case and dispose of the litigation. The final decision ofttimes is in no way related to the interlocutory decision. An interlocutory decision is an incident of the case and only settles some intervening matter related to the main case. (Corpus Juris, Ibid., and cases cited.)

What issue could the board have in hand in this case to which their action on the petition would be interlocutory? If there had been no appeal, the collector would have liquidated the entry, and as far as the Board of General Appraisers was concerned, the whole matter would have been ended. The motion of the Government to dismiss the appeal of appellant is *overruled.*

Appellant assigns as error of law and fact the failure of the board to find that the entry of the merchandise by the importer at a less value than that returned upon final appraisement was without any

intention to defraud the revenues of the United States or conceal or misrepresent the facts of the case or deceive the appraiser as to the valuation of the merchandise. We think this assignment of error squarely presents the question as to whether upon appeal this court is authorized to review the evidence in the hearing before the board. For the reasons heretofore assigned in connection with the Government's motion to dismiss the appeal, and in conformity with the sections of the statute heretofore quoted, we think it is our duty to review the evidence introduced before the board.

It is contended that such review must be only as to such matters of evidence as would amount to questions of law. In other words, it is contended that, if there is any evidence to support the finding of the board, this court can not disturb its finding, and that, if there was no evidence to sustain its finding, we would be justified (assuming we have the right to review) in disturbing the finding of the board purely as a matter of law.

In the early history of the court, in a very well considered case, Presiding Judge Montgomery rendering the decision of the court clearly stated the rule applicable to this issue. In United States v. Riebe (1 Ct. Cust. Appls. 19; T. D. 30776), on a question of classification and the question as to whether this court has the power to review questions of fact, the court decided that it did have the right to review the facts, and furthermore, applied the rule in the trial of equity cases rather than the law rule. They were there construing section 198, which is now before us, and used the following language:

A careful reading of this statute satisfies us that it was the intent of Congress that this court should have the power to review questions of fact. The circumstance that all the evidence before the board is competent evidence and that all is required to be returned to this court indicates that such was the intent.

We think the proper practice is analogous to that which obtains on appeals in equity cases in the State or Federal courts. That rule has been stated in various ways in the different courts, but the courts all recognize the better opportunities of a trial court to judge of the credibility of witnesses, and hesitate for this reason to disturb the conclusion except in a case where the evidence is clearly inconsistent with the conclusion reached by the trial court. The rule as stated in the Blankensteyn case (56 Fed. 474) is as follows:

"The circuit court should not undertake to disturb the findings of the board upon doubtful questions of fact, and especially as to questions of fact which turn upon the intelligence and credibility of witnesses who have been produced before the board. But when the finding of fact is wholly without evidence to support it, or when it is clearly contrary to the weight of evidence, it is the duty of the circuit court to disregard it."

We think this a fair and correct statement of the rule which should govern us under the organic statute above quoted.

This leads us to the inquiry as to whether the conclusion of the board in this case is clearly against the weight of evidence. We have not been able to satisfy ourselves that the Government has presented such a case. (P. 20.)

The rule of law that, if there is any evidence to support the finding of the trial tribunal, it can not be disturbed on review is not applicable to the review by this court of proceedings before the board on petitions filed under paragraph 489 of the act of 1922, but the rule in the trial of equity cases, as laid down by this court in the Riebe case, supra, must be applied.

A casual reading of section 489 might lead to the hasty conclusion that the words "upon petition filed and supported by satisfactory evidence under such rules as the board may prescribe" left action upon the petition to the arbitrary discretion of the board, and that "satisfactory evidence" might mean *satisfactory to the board*. This was not the intention of Congress, and the courts have not so construed similar provisions.

In United States *v.* Lee Huen (118 Fed. 442) the court was construing the following provision from the statutes:

That any Chinese person or person of Chinese descent arrested under the provisions of this act or the acts hereby extended shall be adjudged to be unlawfully within the United States unless such person shall establish by affirmative proof, to the satisfaction of such justice, judge, or commissioner, his lawful right to remain in the United States.

and the court there said:

In this connection it should be remembered that credible and undisputed evidence amounts to proof, and must be accepted as such. What shall be accepted as satisfactory proof is evidence that satisfies the judicial mind. The defendant is not required to satisfy the prejudiced, the capricious, the unreasonable, or the arbitrary mind; but he must satisfy the judgment of a reasonable man, acting honestly and with good judgment, and without prejudice or bias. The commissioner may not arbitrarily or capriciously, or against reasonable, unimpeached, and credible evidence, containing no element of inherent improbability, and which is uncontradicted in its material points, and susceptible of but one fair construction, refuse to be satisfied. When clearly, from the evidence, the judicial mind ought to be satisfied, in the eye of the law it is satisfied.

The court quoted Stephens' Digest and Greenleaf on Evidence, as defining "satisfactory evidence," as follows:

Satisfactory or sufficient evidence: That amount or weight of evidence which is adapted to convince a reasonable mind. (Steph. Dig. Ev., 2d Ed., p. 3, note 2.)

By "satisfactory evidence," which is sometimes called "sufficient evidence," is intended that amount of proof which ordinarily satisfies an unprejudiced mind beyond reasonable doubt. The circumstances which will amount to this degree of proof can never be previously defined. The only legal test of which they are susceptible is their sufficiency to satisfy the mind and conscience of a common man; and so to convince him that he would venture to act upon that conviction in matters of the highest concern and importance to his own interest. (1 Greenleaf, Evidence, Sec. 2.)

Observing the above meaning of the word "satisfactory," the board had the right to determine whether the evidence introduced by the importer was "satisfactory," and this court on appeal guided

by the principles heretofore set out must pass upon the question as to whether the finding of the board that the evidence was *not satis-factory* was correct.

In passing upon this question we think it is proper to have in mind that in tariff laws preceding the act of 1922, there was no provision for remission of additional duties except for manifest clerical error. By imposing additional duties for undervaluation, Congress sought to prevent an undervaluation which might lead to defrauding the customs revenues or to concealing or misrepresenting the facts of the case, or to deceiving the appraiser as to the valuation of the merchandise. The act of 1922, recognizing that there were instances of undervaluation which were free from taint of fraud or ulterior motive, liberalized the law under which importers could obtain remission of additional duties. It, however, put upon the importer the burden of showing by satisfactory evidence affirmatively that, in entering his merchandise at a price lower than the appraised value, he did not intend the things the Government had sought to prevent in the enactment of the additional duties provisions.

While there may be no legal presumption of fraud or intent to deceive, etc., in the fact that additional duties have been levied or that an undervaluation had been made, Congress, recognizing the possibility and even the probability of the existence of such conditions, placed the burden upon the importer to show affirmatively that such did not exist. The witnesses with whom the importer must make this showing are before the board and on questions of intent to defraud and deceive, the appearance of the witness, his conduct and manner of giving evidence must necessarily be given great weight by the board in determining the honesty and sincerity of the importer. It might have been well for Congress to have left the matter entirely to the discretion of the board, or to have prescribed that in reviewing facts the rule of law and not the rule in the trial of equity cases should be applied in appeals to this court. This court can not supply legislation, and under the rule in the trial of equity cases, we must review the evidence with the view of determining as to whether it was "satisfactory." For the reasons heretofore set out, this court will be slow to disturb the finding of the board on the weight of the evidence on petitions under this section of the statute. Their better opportunity for weighing the evidence properly before them in this particular jurisdiction where fraud, concealment, and deceit are involved, is recognized by this court, and when reviewing the facts upon which their decision is based will be given great weight. (Creamer *v.* Bivert 214 Mo. 473; 113 N.W. 1118.)

In the present case, however, as above observed, we find that the Board of General Appraisers denied the petition of the importer apparently chiefly on the grounds that the wrong man testified, and

that the broker should have testified, and that the importer was careless and negligent. The opinion below closes with the following statement: "The most that can be said about the importer was that he was very careless. Sometimes neglect is as bad in law as acts of commission."

We need not here discuss the question raised by the fact that the importer failed to call as a witness the broker who made the entry, for we are satisfied that the judgment of the board must be reversed upon the ground that apparently the importer was denied a remission of the additional duties chiefly if not entirely upon the ground that he was very careless in the transaction relating to the making of the entry. As we have stated above the burden rested upon the importer to establish by satisfactory evidence that his action was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. If the importer in any such case establishes these facts as aforesaid he becomes entitled thereby to the findings of the board in his favor as prescribed by the statute, and he would not forfeit that right because of mere carelessness alone upon his part in the transaction.

In the present case, if we construe the board's opinion correctly, the importer's petition was denied upon the ground that if the importer was not guilty of fraud, he was at least very careless. We do not regard this finding as an answer to the issue raised by the importer's petition, or as a sufficient ground for its denial, accordingly we reverse the board's judgment and remand the case for a new trial. *Reversed.*

SMITH, Judge, dissenting from the denial of the motion to dismiss and concurring in the conclusion reached on the merits:

I am sorry but I must dissent from that part of Judge Bland's decision which denies the Government's motion to dismiss the importer's appeal.

Sections 195 and 198 of the Judicial Code give to this court the right to review only such *final* decisions of the law and the facts respecting *the classification* of imported merchandise and *the rate of duty* imposed thereon and the fees and charges connected therewith and all appealable questions as to the *jurisdiction* of said board and all appealable questions as to the laws and regulations governing the enforcement and collection of customs revenues.

In this case no question is raised as to the classification of the merchandise or as to the rate of duty imposed thereon or to the fees or charges exacted by the collector or as to the jurisdiction of the board to hear and determine the importer's petition. Neither is there any *final* decision or judgment as to the laws and regulations governing the collection of the customs revenues. Indeed, no

such decision was possible until after liquidation of the entry and as yet no such liquidation has been made.

The finding provided for in section 489 is purely preliminary and interlocutory and is not a final decision or judgment inasmuch as it does not finally determine or purport to finally determine the rights of the parties.

In the case of Brown & Co. v. United States (12 Ct. Cust. Appls. 26; T. D. 40026) the Board of General Appraisers held that it was without jurisdiction to entertain the petition provided for in paragraph 489 and ordered its dismissal. From that order an appeal was taken to this court and that appeal we refused to dismiss on the ground that the decision of the board raised an appealable question as to the *jurisdiction* of said board and an appealable question as to the laws and regulations governing the collection of customs revenues. In this case no appealable question as to the jurisdiction of the board or as to the laws and regulations has been raised or can be raised until the board is called upon to finally decide the rights of the parties.

In my opinion Congress vested the Board of General Appraisers with exclusive and final authority to hear the petition and make the finding provided for by section 489. As I see it, its finding is just as binding and conclusive on us as was that of the Secretary of the Treasury as to remission of additional duties under the law as it existed prior to the passage of section 489. But if the Board of General Appraisers be not the final arbiter in the matter, its finding is not a final decision or judgment and any error committed by the board must be reached by way of protest against the final liquidation. To hold otherwise simply means the postponement of liquidation for a period of eight months or a year and useless delays in the transaction of customs business. I cannot think that Congress intended any such result as that, and that if it had it would have expressly given the right of appeal, just as it did in appraisement cases.

I concur in the conclusion reached on the merits of the case.