M. Pressner & Co. *v.* United States (No. 4174) [1]

[1] C. A. D. 16.

United States Court of Customs and Patent Appeals, October 31, 1938

*Siegel & Mandell* for appellant.

*Webster J. Oliver*, Assistant Attorney General (*John J. McDermott*, special attorney, of counsel), for the United States.

188

[Oral argument October 11, 1938, by Mr. Mandell and Mr. Oliver]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

The merchandise involved in this appeal consists of tiny figures representing various animals, such as cats, dogs, sheep, etc. The merchandise was imported at the port of Baltimore, and was classified by the collector as "toys" and assessed with duty at the rate of 70 per centum ad valorem under paragraph 1513 of the Tariff Act of 1930. Appellant protested such classification and assessment of duty. Several claims were made in the protest, but the only one relied upon before the trial court and before us is the claim that the merchandise is .dutiable at 25 per centum ad valorem under paragraph 1403 of said act; this paragraph includes manufactures of papier mâché not specially provided for.

In view of the sole issue before us it is unnecessary to set out the competing paragraphs involved.

On the trial one witness testified in behalf of the appellant. There also appears in the record the following:

Mr. MANDELL. I offer in evidence the official report of the appraiser, transmitting the protest, and the collector's letter, and direct attention to the fact that the appraiser's report in this case has been filed within the period prescribed by the statute. It is dated October 6, 1937, and the protest was lodged on September 2, 1937, so it is within the 90-day period.

Presiding Judge McCLELLAND. Who makes that report?

Mr. MANDELL. The appraiser at the Port of Baltimore, and it is within the time.

Mr. McDERMOTT. I object to the conclusions in the report, regardless of whether it is timely or not. The report says these are small articles about 1¾ inches high, and so long, and composed in chief value of papier mâché. That is distinctly a conclusion.

Presiding Judge McCLELLAND. If it is objected to it won't be admitted.

Mr. MANDELL. If it is timely——

Presiding Judge McCLELLAND. Oh, no. The court has simply held, the court of appeals, that if it was filed within the 90 days it might be considered by the court, but here objection is made to it. The Government objects to it. The Government has a right to cross-examine the man who signed it. I will have to sustain the objection.

Judge BROWN. Note my dissent.

Mr. MANDELL. Exception.

The trial court, Judge Brown dissenting, overruled the protest without affirming the action of the collector. In the majority decision we find the following:

We are of opinion plaintiffs have established *prima facie* that these articles are not toys, but they have not introduced proper proof bringing them within any of the claims in the protest. Therefore on this record we must overrule the.protest, without, however, acquiescing in the action of the collector, which appears to be erroneous.

Judgment was entered accordingly, and this appeal was taken therefrom.

It is conceded before us that, as held by the trial court, the classification by the collector was erroneous.

Before us appellant assigns as error the ruling of the trial court sustaining the objection to the introduction of said appraiser's report, and also, in effect, assigns error by the trial court in not considering said report as a part of the evidence in the record.

Said report is not contained in the printed record, other than a quotation therefrom in the majority decision of the court, nor is it contained in the papers transmitted to this court upon appeal. The record, however, does contain the following:

*Protest 11320*

UNITED STATES CUSTOM HOUSE, BALTIMORE, MD.

COLLECTOR'S OFFICE

*Sep. 2, 1937.*

Respectfully referred to the United States Appraiser for special report and samples or description of merchandise.

1 invoice.

L. L. McLANAHAN,
*Deputy Collector.*

Received Sep. 3, 1937. U. S. Appraiser's Office, Baltimore, Md.

926640–G

*Baltimore, Md., Oct. 6, 1937.*

Respectfully returned to the Collector with report. One sample.

(12 pcs.)

H. G. RINEER,
*Appraiser of Merchandise.*

\*       \*       \*       \*       \*       \*       \*

*Report of the Collector*

UNITED STATES CUSTOMS SERVICE

DISTRICT NO. 13, PORT: BALTIMORE, MD.

*October 27, 1937.*

UNITED STATES CUSTOMS COURT,
        *201 Varick Street, New York, N. Y.:*

I transmit herewith, in compliance with section 515 of the Tariff Act of 1930 (U. S. C., title 19, section 1515), the following protests, the entries and accompanying papers to which they relate, and all exhibits connected therewith:

| Protest No. | Protestant | Entry No. | Date of entry |
|---|---|---|---|
| 11320 | M. Pressner & Co | Cons. 5651 | 5/24/37 |

Enclosures: Entries 1. Invoices 1. Samples 1 box, set of 12.

L. L. McLANAHAN,
*Deputy Collector of Customs.*

Filed Oct. 28, 1937, U. S. Customs Court. J. W. Dale, Clerk.

It thus appears that a special report was required of the appraiser by the collector, and that such report was made by the appraiser and seasonably filed with the collector. It does not, however, affirmatively appear that said special report was transmitted by the collector to the Customs Court, but the inference is, from the notations in the collector's report as to enclosures, that said report was not so transmitted.

Section 515 of the said tariff act requires the collector, if he affirms his original decision after protest is filed, to "forthwith transmit the entry and the accompanying papers, and all the exhibits connected therewith, to the United States Customs Court * * *."

Articles 853 and 855 (a) of the Customs Regulations of 1931 read as follows:

Art. 853. Appraiser's special report on protest.—(a) If the collector shall be of the opinion that any claim in a protest requires further review of an advisory classification or return in order to complete the record necessary to a proper consideration of the issue involved, he shall forward the invoice papers to the appraiser for a special report as to the character and description of the merchandise and all other facts relevant to the case.

(b) The appraiser will return all papers to the collector with his report, customs Form 6437, together with the samples, if any, of the merchandise under consideration.

Art. 855. Transmission of protests and samples to the United States Customs Court.—(a) If the comptroller of customs does not concur, or if the collector shall affirm his original decision, or upon the filing of a protest against his modification of any decision, one copy of the protest and accompanying papers shall be immediately transmitted to the United States Customs Court by the collector, provided that in the case of a consumption entry the duties shall have been paid.

We think a fair interpretation of section 515, supra, and the customs regulation last above quoted requires that an appraiser's special report on protest, made pursuant to a request of the collector, should, if timely, be transmitted to the Customs Court with the protest and other papers relating to the entry. We have repeatedly held that such a report, if timely, becomes a part of the record and may be considered as presumptively correct. In the case of Tower Manufacturing & Novelty Co. et al. v. United States, 6 Ct. Cust. Appls. 267, T. D. 35478, this court stated:

In answer to the first question presented, we are of the opinion that the reports made by local appraisers to collectors concerning merchandise when within their duties become part of the record in the case, and as such may be considered upon the trial of the protest before the board. The duties of local appraisers are defined by articles 1514 et seq., Customs Regulations of 1908. According to article 1514 the appraisers are required among other things, in order to assist the collector in the assessment of duty, to describe the merchandise in such terms as will enable the collector to classify the same for duty. By article 1516, idem, it is provided among other things that appraisers shall report to the collector in writing concerning the prices and quantities of the goods examined by them, and shall note upon the invoice the description of the goods covered thereby. They shall also

furnish any further information affecting the assessment of duty when requested by the collector or naval officer. In section 14 of the administrative act it is provided that when a protest is forwarded by the collector to the board he shall transmit "the invoices and all the papers and exhibits connected therewith."

. In view of the foregoing provisions it seems clear that the appraiser's reports to the collector, such as are therein defined, are part of the official transaction and record which are under review at the trial of a protest, and the board should give them that presumption of correctness which properly attends the official acts and reports of public officers when made in the performance of their duties. It may furthermore be said that this course of procedure has been so long followed by the board and the courts that this fact alone argues legislative authority therefor.

In the case of *Brown & Co.* v. *United States*, 12 Ct. Cust. Appls. 26, T. D. 39895, the court stated:

* * * This court has held that the report of the appraiser, if made seasonably, is to be considered as evidence. Tower Manufacturing & Novelty Co. et al. *v.* United States (6 Ct. Cust. Appls. 267; T. D. 35478). Also, there was a similar holding in National Hat Pin Co. *v.* United States (5 Ct. Cust. Appls. 435; T. D. 34971).

In the case of *Bonwit Teller & Co.* v. *United States*, 19 C. C. P. A. (Customs) 238, T. D. 45339, it was held that the special report of the appraiser involved in that case was not a part of the legal record, solely upon the ground that it was not seasonably made. In that case the decision in the case of *Tower Manufacturing & Novelty Co. et al.* v. *United States, supra,* was cited with approval.

However, a special report of an appraiser may not be resorted to for the purpose of rebutting the presumption of correctness of the collector's classification. *Doap Leun Hong Co.* v. *United States*, 19 C. C. P. A. (Customs) 313, T. D. 45481.

In support of our view that a special report of an appraiser, if seasonably made, has long been considered as one of "the accompanying papers" referred to in section 515, we cite the case of *Mills & Gibb*, Abstract 41214, 33 Treas. Dec. 560, decided in 1917 by the Board of General Appraisers (now the United States Customs Court). In that case there was a special report of an appraiser stating, among other things, that the merchandise there involved was in chief value of beads. The Board of General Appraisers, in a decision by McClelland, General Appraiser, speaking for the board, stated:

After a careful examination of the official record forwarded with the protest. by the collector we are now of the belief that the appraiser's supplementary report, which forms part of such official record, is sufficiently explicit if taken at its face value, in the absence of proof to the contrary, to be convincing that the merchandise is in chief value of beads, and a mere examination of the official sample, shows that the tassel is neither embroidered nor appliquéd. It is true that. the said supplementary report of the appraiser was made more than 30 days after the filing of the protest; but that fact, in our opinion, does not impair its value, especially since the collector in transmitting the protest states that the merchandise "was assessed with duty in accordance with the advisory classification.

returned by the appraiser on the invoice and more particularly described in the special report herewith."

\*     \*     \*     \*     \*     \*     \*

The United States appraiser is not required to make a special report as to his action in returning merchandise after the filing of the protest, nor is the collector required to call upon the appraiser for such report, but it is a matter of common knowledge among importers and others familiar with customs practice that, for so long a period that the memory of man runneth not to the contrary, the collector has forwarded every protest involving the classification of merchandise lodged with him to the appraiser with a request for a special detailed report as to his action on the merchandise covered thereby.

We are decidedly of the opinion that in this case the special report of the appraiser, notwithstanding that it was received by the collector more than 30 days after the filing of the protest, was properly before the board as undisputed evidence of the character of the merchandise, and as a statement of the basis of the appraiser's advisory return thereof and the collector's classification. No further evidence as to the character of the merchandise was necessary.

While it would appear that in that case the special report was untimely and, for that reason alone, under our decisions, should not have been considered as a part of the record, the decision is otherwise in accord with the established rule that a special report of an appraiser, if timely, is a part of the record and in proper cases should be considered "as undisputed evidence of the character of the merchandise."

The Government, however, contends that the statements contained in the special report here involved were extraofficial, and therefore not properly admissible in evidence, and Government counsel repeatedly state in their brief that the collector did not accept the said report, but disregarded it. The Government also cites a number of cases in which it was held that an advisory classification by an appraiser was regarded as extra official and entitled to no weight; but in this case no advisory classification is involved, nor, according to the language quoted from the report in the majority decision of the trial court, was said report disregarded by the collector. On the contrary, the collector's classification was in complete harmony with said report. From the portion thereof quoted in said decision it appears that the appraiser first described the articles and stated that they were composed in chief value of papier mâché. He next advisorily classified them as toys dutiable at 70 per centum ad valorem under paragraph 1513. Only this advisory classification could be regarded as extra official, but the collector adopted such advisory classification, erroneously as the Customs Court has held. In such classification there was nothing whatever inconsistent with the description of the articles contained in the report and the statement of fact that they were composed in chief value of papier mâché. Of course articles composed in chief value of papier mâché would be toys under paragraph 1513 if they were "chiefly used for the amuse-

ment of children." Therefore, there is nothing inconsistent in the description of the articles by the appraiser and their classification by the collector. On the contrary, the presumption is that, if the collector had properly classified the articles, he would have accepted the description of the same made in said special report, nothing appearing in the record to the contrary.

It will be observed that upon the trial the objection of the Government to the introduction of said special report was based solely upon the ground that the statement therein that the articles involved were composed in chief value of papier mâché was merely a conclusion. We think this was merely a statement of fact, within the province of the appraiser in the performance of his duty under article 853 of the customs regulations, and also within the provisions of section 500 (a) (4) of the Tariff Act of 1930, defining the duties of appraising officers, and reading: "To describe the merchandise in order that the collector may determine the dutiable classification thereof; * * *."

The special report here involved does so describe the merchandise, according to the quotation therefrom in the majority decision of the trial court, and if the collector had seen fit to reject the appraiser's advisory classification of the articles as "toys" under paragraph 1513, which he did not, he still would have been able to classify the articles according to their description by the appraiser that they were composed in chief value of papier mâché. It follows that such description should be accepted as presumptively correct unless and until it is shown that it was disregarded by the collector in classifying the merchandise, or otherwise rebutted on the trial. As hereinbefore noted there is no such showing in the record. On the contrary, upon the trial before the Customs Court, Government counsel stated as follows:

Mr. McDermott. This is a case that was on the docket last month, and the importer put some testimony in, and you gave me permission to write to the appraiser at Baltimore to see if any was available at that port. I wrote to that port and received a letter from the appraiser saying there was no testimony available at that port in regard to this merchandise, so I feel, in this situation, it is just as well to submit as to go back to Baltimore, so the Government submits.

That error was committed by the trial court in the trial of this case we have no doubt. If said special report of the appraiser was transmitted by the collector at the port of Baltimore as one of "the accompanying papers" required by the statute to be transmitted to the Customs Court, as we hold it should have been, then it was unnecessary for appellant's counsel to offer it in evidence, for it already was a part of the record before the court and the Government had no right to any cross-examination with respect thereto. The Government might have introduced evidence challenging the correctness of the description made by the appraiser in the special report, but under the

circumstances of this case the facts therein stated, relating to material of chief value of the merchandise, were presumptively correct, and, in the absence of any testimony challenging the correctness of such description, appellant was entitled to rely thereon.

On the other hand, if said special report was not transmitted to the Customs Court by the collector, the trial court should either have admitted the same in evidence when offered by appellant, or suspended the trial of the case and required the collector at the port of Baltimore to transmit said report to the court, as he should have done when the other papers in the case were transmitted.

No objection relative to the report's authenticity was made to the offer of it by appellant, and under the circumstances, if it was not transmitted by the collector to the court, it should have been admitted in evidence, and the appraiser who signed the same was no more subject to cross-examination by the Government than if the report had formed a physical part of the record transmitted to the court.

It follows from the foregoing that the judgment appealed from must be reversed; but, because of our being uncertain as to whether said special report was in the files of the case before the court at the time said offer was made, we must remand the case with directions to sustain the protest if said special report was one of "the accompanying papers" transmitted to the court by the collector, or if not, a new trial is directed to enable the trial court to correct its error in sustaining the Government's objection to the admission in evidence of said special report.

It may be noted at this point that the Government relies upon our decision in the case of *United States* v. *F. W. Woolworth Co.*, 22 C. C. P. A. (Customs) 134, T. D. 47108, wherein we held that the report of a Government analyst respecting the component material of chief value of certain merchandise should have been excluded from evidence upon the trial, the Government having objected thereto. This case has no application to the case at bar for the reason that neither the statute nor regulations authorized such a report by a Government analyst, whereas the report here involved is expressly authorized.

For the reasons herein stated, the judgment of the trial court is *reversed* and the cause is *remanded* for further proceedings in accordance with the views herein expressed.