HENSEL, BRUCKMANN & LORBACHER (INC.) *v.* UNITED STATES
(No. 2487) [1]

1. REMISSION PETITION—PARTY.

A consignee who alleges and proves that he is acting as the agent of the importer is a proper party to file a petition for remission of additional duty imposed for undervaluation under section 489, Tariff Act of 1922.

2. PETITION FOR REMISSION—SUFFICIENCY OF EVIDENCE.

At the trial by the Board of United States General Appraisers of a petition for remission of additional duty imposed under section 489, Tariff Act of 1922, for undervaluation, it appeared that the undervaluation consisted of failure to include in the entry a tax, which was conspicuously shown on the fourth page of the invoice. Entrant testified that he "evidently" did not examine the fourth page, and he did not testify that he had no intention to deceive the appraiser. The denial of the petition is affirmed.

United States Court of Customs Appeals, February 15, 1926

APPEAL from Board of United States General Appraisers, Abstract 47833

[Affirmed.]

*John Giblon Duffy* for appellant.

*William W. Hoppin*, Assistant Attorney General (*John G. Lerch* and *Jerome G. Clifford*, special attorneys, of counsel), for the United States.

[Oral argument December 9, 1925, by Mr. Duffy and Mr. Lerch]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

As far as this case is concerned the pertinent portion of section 489 of the Tariff Act of 1922 reads as follows:

---

[1] T. D. 41377.

\* \* \* Such additional duties shall not be construed to be penal and shall not be remitted· \* \* \* except \* \* \* in any case upon the finding of the Board of General Appraisers, *upon a petition filed and supported by satisfactory evidence under such rules as the board may prescribe,* that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. \* \* \* (Italics ours.)

Appellant, customs brokers, filed with the Board of General Appraisers a petition for remission of additional duties, which petition the board denied. From the judgment of the board, denying the petition, appellant appeals to this court.

Leo Bruck, of the firm Bruck-Weiss Millinery (Inc.), for whose benefit the importation was made, testified that he purchased the goods covered by the invoice (furs) in Germany, for the sum of $2,902, as shown on the invoice. At the time of the purchase there was no mention of any luxury tax.

The other witness for the importer, Charles G. Bauer, a member of appellant's firm, Hensel, Bruckmann & Lorbacher (Inc.), testified that his firm was in the customhouse brokerage business, and that he made the entry in this case; that he had made a number of entries of merchandise coming from Germany, and that he knew that there were luxury taxes and home consumption taxes, and all kinds of taxes on goods coming from that country; that, notwithstanding that fact, when the invoice was handed to him for entry he, evidently, did not turn over to the last page of the papers where the luxury tax was mentioned; that if he had done so, he would have added it to the value. The following question and answer appears in the record:

Q. You did not look to see whether there was anything said about luxury tax?—A. Well, it is evident I did not turn over the other pages otherwise it would have been added.

He stated that he added a German export tax, because that was included on the first page.

The papers in the case are before us, and on the first page of the invoice, after setting out "fifteen pieces of fur, $2,902," the following acts are set forth in small but legible handwriting:

The following charges are *not* included in the above prices:

| | |
|---|---:|
| For box | $15. 00 |
| For packing | . 50 |
| For export tax | 87. 10 |
| For home consumption tax | 58. 04 |
| For consular fees | 2. 50 |
| | 163. 14 |
| Total amount | 3, 065. 14 |

The second page is a statement of the different items of the shipment and the prices of same. The third page is a restatement of the

above charges which were not included in the purchase price, in which statement is again found the words "export tax" and "home consumption tax." The fourth page is divided into two parts, and purports to be certificates made out in Germany. The first is devoted to export tax and the second to luxury tax. The second certificate occupies more than half the page and is written in purple ink with typewriter, and headed in capital letters "LUXURY TAX" underscored, and is as follows:

### LUXURY TAX

I hereby certify that the above-mentioned merchandise is subject to a luxury tax of 15% equal to dollar 2,902——=435.30 dollar or FM. 5,745,960,000—is sold for use in Germany.

This tax is *not* imposed on above goods exported and is *not* included in the price.

Offenbach on Main, 4th September, 1923.

(Signed)        LEONHARD HITZ.

The appraiser added the 15 per centum luxury tax. The importer appealed to reappraisement where the appraised value was affirmed, and it is not disputed in this court that the reappraised value was the correct value.

Omitting the captions and signatures, the decision of the board is as follows:

ADAMSON, General Appraiser:

In this application for remission of additional duties, it appears that *the petition was not filed by the importers in this case, nor by any agent in their name. The brokers who made the entry filed the application in their own name without either alleging any interest in themselves or any representative capacity with authority to file a petition for the importers, and even in that latter event they should have filed it in the name of the importers and not in their own name. The merchandise was purchased by one Leo Bruck, of and for the firm of which he was a member, Bruck-Weiss Millinery Company.*

In our opinion, the meaning of the language in the statute undoubtedly is that the petition should be filed by, or for, and in the name of the importer. That construction is borne out by the language in Rule 36 which shows the understanding of the board as to the meaning of the statute. That rule declares that petitions "made by importers for remission," etc.

Furthermore, if the papers were in the name of the importer and professedly for the benefit of the importer and by authority, the evidence does not make out a case authorizing the granting of the relief prayed for. The testimony of the plaintiff was directed mainly to the method of payment and the amount paid, which was nowhere controverted. The member of the firm who bought the goods says that nothing was said about the luxury tax, and that this bill was the only one he received. He did not enlarge his testimony to cover his additional knowledge norl ack thereof, nor effort to secure any information, nor does his testimony show that he gave any instructions at all to his broker. Then the broker stated that he merely acted according to the two taxes, which is mentioned on the first page of the papers accompanying the invoice, and that he did not see the certificate as to the luxury tax, which was on the fourth page, but not stated on the first page, nor does he say that he examined the fourth page to see what else was on it.

It is true that in small letters following the statement of the entire bill on the first page there is a statement of charges not included in the above price, in small imperfect handwriting. Export tax and home-consumption tax are mentioned as not included, but the plain treatment of the tax question is found on pages 3 and 4. A plainly typewritten statement that the export tax and home-consumption tax are not included, is on the third page, while on the fourth page is the plain typewritten statement that the German-export tax is not included in the amount, followed by the plain independent statement certified, that the merchandise is subject to the luxury tax and is not imposed on the above goods exported, and is not included in the price.

The details on the invoice were not completed on the first four pages, but occupied the fifth page, so that if the entry was not made carelessly, before examining the entire invoice, it is remarkable that the maker of the entry overlooked the fourth page, which is the plainest sheet among the entire papers. This board has held that overlooking plain entries on an invoice, or failing to account for one, observed, or which should have been observed, does not support a claim of good faith.

The statement that on reappraisement the petitioner admitted the undervaluation does not cure the defect. It was too late. The record of reappraisement with the papers shows that the single general appraiser sustained the appraisement on the hearing.

We have examined the two cases cited by petitioner's counsel, and find the facts of these cases were entirely different from the facts in the case at bar, but we observe the statement made in those cases by Judge Waite in rendering the opinion, in which even in those cases, appealing strongly as they did to the consideration of the board, he advised the importers and counsel to be more careful in giving attention to their cases on the question of market prices. The petition is denied. (Italics ours.)

Appellant has assigned as error the finding of the board, involved in the first two paragraphs of its decision, which assignments are in the following language:

3. In finding and holding that the petition denied was not in due and proper form and specifically in not holding that under section 489 of the Tariff Act of 1922, and under the law as made and provided, the petitioner herein was the importer.

4. In not holding that under section 483 of that act, petitioner was the proper person to execute and submit the petition denied under section 489.

We think the assignments correctly challenge the conclusions reached in the two paragraphs referred to, which, in our opinion, are clearly erroneous. If the opinion stopped at this point, and if the petition had been denied on the grounds set out in the first two paragraphs, we would be compelled to reverse the board without further comment upon or consideration of the decision of the case on its merits.

The petition, in this case, as it appears in the record, omitting the caption, signature, and verification, is as follows:

Your petitioner respectfully prays that the Board of United States General Appraisers consider and determine upon the facts herein recited and on all the papers in the proceedings heretofore had, and upon such facts as may be established at a hearing under the rules made and provided by the board in such cases, whether your petitioner in entering the merchandise at the entered values intended

to defraud the revenue of the United States, or to conceal or misrepresent the facts of the case, or to deceive the appraiser as to the value of the merchandise.

*The facts desired to be shown at the hearing on this petition are as follows: That the imported merchandise, having been purchased by one Leo Bruck, an officer of Bruck-Weiss Millinery (Inc.), and paid for in American money at the prices stated in the consular invoice, was entered by your petitioner in its own name for account of that concern.*

That the consular invoice showing upon its face an item of export tax, $87.10, and another item, home-consumption tax, $58.04 (the latter of which taxes clearly could not have been imposed in the case of this transaction, which was for export), your petitioner assumed that this enumeration of taxes comprised all the taxes to which the merchandise was or could, if sold for home consumption, be subjected in the country of export, and made up its entry accordingly, overlooking a certificate attached to the invoice made by the shipper to the effect that this merchandise, when sold for home consumption in Germany, is subject to a luxury tax of 15 per centum, which certificate was attached to the consular invoice at the time of making entry; that upon reappraisement proceedings your petitioner conceded the correctness of the appraised value herein.

Wherefore, your petitioner respectfully prays that the Board of United States General Appraisers find that there was no intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise.   (Italics ours.)

Attention is called to the italicized portion. It seems evident that the court entirely overlooked this paragraph. We think this paragraph abundantly shows the authority in the appellant to file the petition. The papers in the case show that the goods were consigned to appellant. Section 483 of the Tariff Act of 1922 provides, "All merchandise imported into the United States shall, for the purposes of this title, be held to be the property of the person to whom the same is consigned."

We call attention to the following opinion in the board's decision:

In our opinion, the meaning of the language in the statute undoubtedly is that the petition should be filed by, or for, and in the name of the importer—

And then it is followed by—

Furthermore, if the papers were in the name of the importer and professedly for the benefit of the importer and by authority, the evidence does not make out a case authorizing the granting of the relief prayed for.

The petition shows that it was filed by the consignee, and that it was filed by an agent, a corporation, which, by its vice president, states that it was acting for account of Bruck-Weiss Millinery (Inc.). In section 489, in referring to the filing of a petition for the remission of additional duties, may be found the following:

* * * upon a petition filed and supported by satisfactory evidence under such rules as the board may prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud, etc.

At no place in the section is it either directly or indirectly suggested that the importer is the only proper person to file the petition. Of course, whoever files it should show his interest. It is clear, in this

case, that the brokerage firm was there and is here acting for its client, and if the duties are remitted the benefit will accrue to the party in interest, which is admittedly Bruck-Weiss Millinery (Inc.).

But the board did not rest its decision with a finding against the petitioner upon the erroneous grounds indicated in the first two paragraphs of its opinion. It took up the testimony of the witnesses and the facts shown by the papers, and discussed their effect, and, upon the evidence, held against the petitioner's contention, and denied the petition.

It is contended by appellant before this court that it has proved by uncontradicted testimony that he did not see or did not turn over to the last page, and therefore did not know at the time of making the declaration of value of the goods that there was a luxury tax to be added, and that he probably was influenced not to turn to the last page by the fact that two different kinds of taxes were mentioned on the front page, of which he did take notice, and that this testimony must be accepted as satisfactory proof that there was no fraud or intent to deceive, etc.

It is urged by the Government that the witness Bauer, who made the entry, was an experienced broker of an experienced firm, who had made entries of goods coming from Germany and knew of the various kinds of German taxes to be added; that proof that he overlooked the most glaring and impressive portion of the papers, handed to him for his consideration, is not convincing of good faith on his part in declaring the value of the goods.

A decision of this appeal would certainly be easier for this court if the board had stated in its finding that it did or did not believe the witness when he testified that he did not see the fourth page. Under all the circumstances of this case we feel that we would not be justified in reversing the judgment of the board. The denial of the petition may have been based upon the board's disbelief of the witness. This may be true, although there are certain statements in the petition which might indicate the contrary, or, more properly speaking, statements which would indicate, even though the witness had told the truth, that his overlooking of the fourth page did not indicate good faith.

In the case of *Fish* v. *United States*, 12 Ct. Cust. Appls. 307, this court said:

The witnesses with whom the importer must make this showing are before the board and on questions of intent to defraud and deceive, the appearance of the witness, his conduct, and manner of giving evidence must necessarily be given great weight by the board in determining the honesty and sincerity of the importer. It might have been well for Congress to have left the matter entirely to the discretion of the board, or to have prescribed that in reviewing facts the rule of law and not the rule in the trial of equity cases should be applied in appeals to this court. This court can not supply legislation, and, under the rule in the trial of equity cases, we must review the evidence with the view of determining

as to whether it was "satisfactory." For the reasons heretofore set out, this court will be slow to disturb the finding of the board on the weight of the evidence on petitions under this section of the statute. Their better opportunity for weighing the evidence properly before them in this particular jurisdiction where fraud, concealment, and deceit are involved is recognized by this court, and when reviewing the facts upon which their decision is based will be given great weight.

If this court had been the trial court and were confronted only with the evidence and facts that appear before us in the record, we might have arrived at a conclusion different from that of the board. But the glaring conspicuity of the luxury tax item in the invoice, as well as the witness who testified he did not see it, were before the board. It is not unreasonable to assume that it there and then judged of his honesty, sincerity, and good faith, he being the one who made the entry. It will be noticed that he at no time stated that, in making the entry at a sum 15 per centum lower than the appraised value, he did not intend to defraud the revenue, conceal, or misrepresent the facts. Furthermore, he did not directly say that he had not seen the certificate on the fourth page. In view of the unsatisfactory character of the witness's explanation the board may have felt that the witness should, at least, have disavowed any intent to defraud, etc., if he really was in good faith in making the entry. In *Linen Thread Co.* v. *United States*, 13 Ct. Cust. Appls. 301, T. D. 41220, in speaking of satisfactory evidence under section 489, this court said:

Such facts may be proved by the circumstances and conditions attending the entry of the merchandise at a value less than that returned upon final appraisement, including direct testimony of the intention of the petitioner. Such direct testimony of intention is of no great probative force, however, unless the circumstances attending the act are of doubtful or double significance.

We do not mean to hold that it is necessary that the individual making the entry shall, in every case, affirmatively disavow such intention in order to entitle the interested party to have additional duties remitted, nor do we wish to give to testimony of this character any more weight than is indicated in the above-cited case, but if the one making the entry is a witness for the petitioner and his testimony is not positive or satisfying, his failure to deny such intent might properly influence the board in judging as to his good faith. In any event, direct testimony of good faith, by this witness, would have been helpful under the circumstances of this case.

The judgment of the board is *affirmed.*

### DISSENTING OPINION

SMITH and BARBER, Judges: We regret very much that we find ourselves unable to concur in the prevailing opinion.

The importers in this case purchased certain clothing for which they paid the sum of $3,062.64 and were furnished a typewritten

bill in English from which it appears that the total amount paid for the various articles of merchandise was $2,902, and that the following charges were not included in that amount:

| | |
|---|---|
| Box | $15. 00 |
| Packing | . 50 |
| Export tax | 87. 10 |
| Home-consumption tax | 58. 04 |
| Consular fees | 2. 50 |

That bill was attached to the consular invoice. To the invoice was also attached a typewritten sheet containing the statement that the goods were subject to an export tax of $87.10 and a luxury tax of $435.30, and that neither of those taxes was included in the amount of the invoice. When the broker came to make his entry he entered the goods at the invoice price, plus the export tax and consumption tax, both of which taxes appeared on the face of the bill which was attached to the invoice. Having noted that two taxes were mentioned on the face of the bill it was quite natural, as we see it, for the broker to assume that no other taxes were imposed upon the goods and to fail to turn over the additional sheet which repeated the amount of the export tax mentioned in the bill and stated the luxury tax which was not noted at all on the bill.

The broker testified that he overlooked the luxury tax, that he knew that there were luxury taxes on various articles, but that he did not look to see whether there was a luxury tax attached to the particular merchandise imported. He testified "Well, it is evident I did not turn over the other pages, otherwise it would have been added."

The prevailing opinion points out that the board entirely overlooked a whole paragraph of the petition for remission. If that paragraph had not been overlooked and if the board had not also overlooked the bill of lading and customs extract therefrom, both of which disclosed that the goods were *consigned* to Hensel, Bruckmann & Lorbacher (Inc.), it could hardly have made the following finding:

It appears that the petition was not filed by the importer in this case, nor by any agent in their name. The brokers who made the entry filed the application in their own name without either alleging any interest in themselves or any representative capacity with authority to file a petition for the importers, and even in that latter event they should have filed it in the name of the importers and not in their own name.

Either the board made a mistake in overlooking a paragraph of the petition and the bill of lading or this court made a mistake in making the statement that the paragraph was overlooked and that the goods were consigned. Whether the board or the court made the mistake, however, it was a mistake comparable with that of the broker in making his entry, yet we are quite sure that neither one nor the other was wanting in good faith. Brokers, and even judges, make mistakes,

but from such mistakes standing by themselves, a lack of good faith can scarcely be presumed.  To establish the precedent that a presumptive lack of good faith arises from mere neglect, carelessness, or mistake would simply result in frequently doing a rank injustice to persons entirely innocent of wrong or intention to do a wrong.

The uncontradicted testimony of the witnesses on behalf of the importer was wholly unimpeached and there is not the slightest intimation in the opinion of the board that they were unworthy of belief.  In our opinion there is not a scintilla of evidence in the record, printed or unprinted, which would warrant even a *prima facie* presumption that either the importer or his broker omitted the luxury tax from the entry with the intent to defraud the revenue or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise.  The invoice and papers attached to it furnished the appraiser with complete information as to the value of the goods, the consumption tax, the export tax, and the luxury tax.  The broker having read the bill, it was quite natural for him, as we see it, to omit the luxury tax from the entry and to assume that there was no tax on the goods other than those mentioned in the bill.  That the broker was careless in not reading all the papers attached to the invoice must be admitted, but that is no ground for declining to grant the relief prescribed by paragraph 489.  The papers furnished to the appraiser were not calculated to mislead the appraising officers.  The invoice and papers attached could not mislead the appraising officers, unless they were guilty of the same carelessness as the broker, and such carelessness can not be well attributed to Government officers inasmuch as it is legally presumed that they will do their duty.

As we read the decision of the board, the board simply finds, in effect, that the importer and the broker were careless and that their failure to note the plain entries on an invoice does not support a claim of good faith.  That finding simply means that from carelessness lack of good faith must be implied.  There is no finding whatever that the allegations of the petition were untrue or that the importer did not sustain the burden imposed upon him by his petition.

  Merely to find that the importer was careless is not a finding sufficient to justify the board in deciding whether there should be a remission.  Both the importer and the Government are entitled to a finding either that there was no intent to defraud or that the importer did not sustain his burden that there was no such intent.

  *United States* v. *Fish,* 268 U. S. 607.

More than that, General Appraiser McClelland, in the reappraisement proceedings, took pains to state that he was satisfied that the entry of the merchandise was made without any purpose to undervalue it.