GUERIN MILLS (INC.) *v.* UNITED STATES (No. 3128)[1]

United States Court of Customs Appeals, January 9, 1929

*Waterhouse & Lockett* (*Joseph F. Lockett* of counsel) for appellant.
*Charles D. Lawrence,* Assistant Attorney General (*Peter A. Abeles* and *Oscar Igstaedter,* special attorneys, of counsel), for the United States.

[1] T. D. 43200.

[Oral argument October 5, 1928, by Mr. Lockett and Mr. Igstaedter]

Before GRAHAM, Presiding Judge, and BLAND and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court denying a petition for remission of additional duties. The petition was filed pursuant to the provisions of section 489 of the Tariff Act of 1922, the pertinent part of which reads as follows:

SEC. 489. ADDITIONAL DUTIES.—If the final appraised value of any article of imported merchandise which is subject to an ad valorem rate of duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the entered value, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty of 1 per centum of the total final appraised value thereof for each 1 per centum that such final appraised value exceeds the value declared in the entry. Such additional duty shall apply only to the particular article or articles in each invoice that are so advanced in value upon final appraisement and shall not be imposed upon any article upon which the amount of duty imposed by law on account of the final appraised value does not exceed the amount of duty that would be imposed if the final appraised value did not exceed the entered value, and shall be limited to 75 per centum of the final appraised value of such article or articles. Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided, except in the case of a manifest clerical error, upon the order of the Secretary of the Treasury, or in any case upon the finding of the Board of General Appraisers, upon a petition filed and supported by satisfactory evidence under such rules as the board may prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. * * *

The merchandise involved consists of certain "card clothing" imported into the United States from Liege, Belgium. The consular invoice is dated September 24, 1923. It appears that the merchandise was exported on October 13, 1923. The prices for the merchandise were declared in the invoice in French francs. At the right appears the following notation: "Home market value on date of purchase of merchandise"; immediately below appears a restatement of the unit prices. At the right of the above notations appears the following: "Home market value of the merchandise on date of exportation"; immediately below this the unit prices are again restated. On the extreme left of the page of the invoice, in a column headed, "Marks, numbers, and quantities," appears in the French language, as translated, the following: "Prices in Belgian francs, at Liege." Immediately below this notation appears a statement of the unit prices for the merchandise. The unit prices in Belgian francs are as follows: "29.02, 29.02, 23.40, 23.40, and 22.10." The unit prices in French francs are stated to be "21.77, 21.77, 17.55,

17.55, and 16.55." It will be observed that the prices in Belgian francs are in each instance greater than those in French francs.

The merchandise was entered in accordance with the invoice prices in French francs. However, below the total number of French francs, in the entry, appears the following: ".0518–$2504—45—1126.80." The figures .0518 represent the rate of exchange for Belgian francs on the date of exportation of the merchandise, October 13, 1923. The figures $2504 represent the total value of the merchandise in United States currency. The figures 45 represent the ad valorem rate at which the imported merchandise was dutiable. And the figures 1126.80 represent the total amount of duty to be collected on the merchandise.

The rate of exchange for French francs on October 13, 1923, was $0.0608.

From these figures it appears that, while the merchandise was entered in French francs, the broker for the importer used the rate of exchange for Belgian francs, in an effort to convert the French francs into United States currency.

The merchandise was appraised at the declared unit prices in Belgian francs. The advance in value was approximately 34 per centum. This advance was not due merely, as stated by counsel, to the difference in the rates of exchange.

On the trial below evidence was introduced by appellant for the purpose of showing that the prices for like merchandise had remained unchanged for more than two years; that nothing was said about the prices to be paid for the merchandise at the time it was ordered; that three representatives of appellant examined the invoice—a bookkeeper for appellant, the secretary for appellant's brokers, Stone & Downer Co., and a representative of Perry Ryer & Co., brokers—and that each failed to observe the notations of unit prices in Belgian francs appearing in the column on the left side of the invoice; that the consular invoice was submitted to the examiner at the port of New York, and a request made of him for information as to the dutiable value of the merchandise; and that the examiner reported that he had "No information."

No evidence was offered by the Government.

Upon this record the court below denied the petition for remission of the additional duties imposed pursuant to the provisions of section 489.

It is claimed by counsel for appellant that the record conclusively shows that the entry was made in entire good faith. Many decisions of this court are cited which, it is claimed, if followed here, will necessarily result in a reversal of the judgment below. It is argued that the issues in this case are controlled by the decision of this court in the case of *Linen Thread Co.* v. *United States*, 13 Ct. Cust. Appls.

395, T. D. 41322. The facts in that case are concisely stated in the headnote. It reads:

Appellant sent twine abroad to be made into netting. When the netting was imported, he entered it on the invoice, supposing that the invoice included the value of the twine. It did not, but plainly stated the facts. His petition for remission of additional duty for undervaluation, under section 489, Tariff Act of 1922, should have been granted, since, though he may have been careless, that there was a fraudulent intent was clearly negatived.

Counsel has quoted the following excerpt from the opinion, and insists that the principles therein announced are decisive of the issues here:

The fact that on reading the invoice the appraiser discovered that the value of the twine had been omitted is certainly substantial evidence that the invoice was not prepared to mislead or deceive him. In our opinion no intention to deceive can reasonably be attributed either to the shipper or to the importer. The importer and the customs broker may have been careless, negligent, or lacking in diligence and for such delinquencies the goods might be subjected to additional duties if the statute so provided. The statute does not so provide, however, and mere carelessness, negligence, or want of diligence on the part of the importer, coupled with no fact or circumstance which shows or reasonably tends to show that there was an intention on his part to defraud the revenue or to conceal or misrepresent the facts or to deceive the appraiser as to the value of the merchandise, does not justify the conclusion that such an intention existed. Certainly, it can not be presumed that the importer in this case had any ulterior purpose in presenting to the customs officials an invoice which did not include the value of the material used in the manufacture of the goods and manifestly disclosed that omission to the appraiser.

Counsel has overlooked a most important statement in that opinion which, if a correct understanding of the decision is to be obtained, should be considered. We quote:

An unexplained misstatement of prices in an invoice or a statement of values which an importer has no good reason to believe to be correct or which a prudent careful business man would not vouch for without further investigation, might well be regarded as at least misleading, if not a misrepresentation of fact.

Counsel might be right in contending that the facts in the *Linen Thread Co.* case are somewhat similar to those in the case at bar, but the similarity does not extend to a point where it may be said that a decision in one case is controlling of the other. That there was negligence in both cases may be admitted, but we are not inclined to the opinion that the facts are similar in other respects. Whether the invoice in this case was intended to deceive the appraiser is not the object of the inquiry; but, if we are to accept the theory of counsel for appellant, three representatives of appellant were deceived by the statements contained therein. It may be, as contended by appellant, that all of these representatives were negligent and careless.

If the facts in the case were inconsistent with an intention to conceal or misrepresent the facts or to deceive the appraiser or to defraud

the revenue of the United States, mere negligence would not be a bar to recovery in the action. We so held in the *Linen Thread Co.* case, *supra*. However, this does not mean that proof of negligence is sufficient to establish good faith.

The entry in the case at bar clearly indicates that the broker who prepared it believed that the merchandise was dutiable in accordance with its value in Belgian francs. In his attempted conversion of French francs into United States dollars he used the rate of exchange for Belgian francs. If the merchandise was dutiable according to its value in French francs, why did he not use the rate of exchange for French francs? Had he done so, the duty would have been greater than that stated by him in the entry. With these unexplained circumstances confronting us, may we accept an hypothesis of mere negligence as a basis for a finding that, in undervaluing its merchandise the appellant acted in entire good faith? We think not.

We do not intend to be understood as holding that the evidence indicates fraud on the part of the representatives of appellant. However, we must hold, if any effect is to be given to the principles heretofore announced by this court, that the evidence is not sufficient to establish good faith.

The judgment is *affirmed*.